KEARNEY LAKE, LAND & RESERVOIR
COMPANY, a corporation, Appel-
lant (Plaintiff below),

v.

LAKE DeSMET RESERVOIR COMPANY, a
corporation, Appellee (Defendant below).

No. 3829.

Supreme Court of Wyoming.

July 14, 1971.

Henry A. Burgess, Sheridan, for appellant.

Wiliam J. Kirven, of Kirven & Hill, Buffalo, for appellee.

James E. Barrett, Atty. Gen., and Herbert S. Rovner, Sp. Asst. Atty. Gen., as amicus curiae.

ON REHEARING

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

In Kearney Lake, Land & Reservoir Company v. Lake DeSmet Reservoir Company, Wyo., 475 P.2d 548, we upheld the dismissal of plaintiff's petition by the lower court primarily on the ground that the petition was fatally defective in stating a claim upon which the relief requested could be granted. In passing upon the proposition that the court in view of the provisions of Title 41, Ch. 2, Art. 4, W.S.1957, was without jurisdiction to decide the basic issue in the case, i. e., "abandonment of certain water rights held by defendant," we said, 475 P.2d at 549–550:

"* * * in view of the provisions of the Wyoming Administrative Procedure Act, §§ 9–276.19 to 9–276.33, W.S.1957 (1969 Cum.Supp.), which inter alia gives to the board discovery powers, it would appear that the usual abandonment proceeding should be initiated before the board of control. Even in actions of which the district court has jurisdiction and the question of abandonment, not previously litigated, becomes an issue, there should be utilization of the board of control—perhaps somewhat along the lines provided in Rule 53, W.R.C.P., for masters. * * *"

We intended thereby a clear caveat that henceforth, in view of the provisions of the Wyoming Administrative Procedure Act, §§ 9–276.19 to 9–276.33, W.S.1957 (1969 Cum.Supp.), supplementing the board's powers with respect to the essentials necessary to assure a full and fair hearing, the lower courts should see to it that questions of abandonment be first determined by the board. The purpose, of course, was to remedy a need, long recognized by this court, to correlate the function of the courts with respect thereto within their jurisdiction and the function of the board within its jurisdiction in order that there be uniformity in decision and in order to utilize the expertise of the board.

■ In its petition for rehearing and its brief in support thereof plaintiff was quite critical of the procedure proposed and it appearing that further and full development of this important matter by way of briefs and argument from the parties, as well as the board, would be desirable, we granted the rehearing but confined it to this sole question.[1]

Ably assisted by the excellent briefs which have painstakingly reviewed and analyzed practically every case emanating from this court pertaining to the question and the arguments on the law applicable thereto, we are now persuaded of the need for some clarification of what was intended to be accomplished and to reappraise what must be done hereafter when this question arises. We quite agree that the time has come, in view of the reticence of the legislature to undertake the task, for this court as definitively as possible to lay down the procedure.

In doing so it must be kept in mind as a general proposition that we are not endowed with the wisdom to foresee all of the contingencies that might arise in litigation before the courts involving questions wherein an administrative agency has been

1. In the petition for rehearing plaintiff asserted, among other things, that the jurisdictional question was not raised below and that it had not been afforded an opportunity to respond or argue the matter. It is true that the record did not specifically disclose the raising of the jurisdictional question below. However, it was raised by defendant's brief, and the court was duty bound to make inquiry. Gardner v. Walker, Wyo., 373 P.2d 598, 599.

empowered to act and we are not here undertaking to prescribe a complete palliative in all controversies where questions of jurisdiction are presented in this difficult and delicate relationship. What we do and say may, of course, have some bearing in the future but for the present our purpose is to correct the intolerable situation that for years has existed between the courts and the board in cases involving the issue of abandonment.

Unfortunately the parties and the board do not submit a solution that is acceptable. Plaintiff would have us retain our holdings of longstanding that the courts have concurrent jurisdiction with the board and may initially determine such matters. The defendant and the board, however, insist we now hold that the board has exclusive jurisdiction. To accept plaintiff's view would entirely thwart what we have long held to be desirable, and we place little credence on plaintiff's contention that to require in all instances where the question arises that it be submitted to the board would unduly burden litigants in having the question resolved. True, solution to the question by the board may not be as expeditious as initial solution by the courts but that would seem a small sacrifice to make in accomplishing an orderly and desired procedure at little or no additional expense to the litigant. On the other hand, we cannot and will not at this juncture in the jurisprudence of this state with respect to use of the waters of the state hold that the board has exclusive jurisdiction.

The touchstone of adherence to and application of the doctrine of concurrent jurisdiction insofar as the constitutional provisions relating to the courts and to the board are concerned had its inception and was laid down in the early case of Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 P. 258, 50 L.R.A. 747, 87 Am.St.Rep. 918. While that case dealt with the matter of priorities, the court in its opinion nevertheless extensively discussed the respective powers of the district courts and the board

and then went on to say, 61 P. at 269, "The legislature has not attempted to devest the courts of that [equity] jurisdiction, and we do not think it could successfully do so." Out of that case grew with some impreciseness application of the doctrine to the matter of abandonment in the several cases that followed, all as analyzed and discussed by the opinion in Louth v. Kaser, Wyo., 364 P.2d 96. Nonetheless it was specifically held in that case that the statutory provisions prescribing the procedure to be followed by the board in an abandonment proceeding, §§ 41–47 through 41–53, W.S.1957 (1969 Cum.Supp.), did not confer exclusive jurisdiction on the board and removed any doubt as to our doctrine of concurrent jurisdiction.

In now advancing the argument that the board does have exclusive jurisdiction, the defendant and the board lay great stress upon a change made by the legislature in § 41–48. The pertinent provision was initially enacted by Ch. 106, § 1, S.L. of Wyoming 1913, and provided in part:

"When, pursuant to the provisions of Section 741, Wyoming Compiled Statutes of 1910 [§ 41–47, W.S.1957], any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of such abandonment, he *may* present his case in writing to the Board of Control. * * * *" (Emphasis supplied.)

In 1929 the legislature, by Ch. 18, § 1, S.L. of Wyoming 1929, struck the word "may" and substituted the word "shall," as § 41–48 now provides. That was the only change made with respect to procedure. While it is true we have not heretofore specifically pointed out such change, it is a broad assumption to say that it has been overlooked. In any event, there are several reasons why we think the contention is without merit. Foremost, of course, is the fact that the board certainly knew of the change at the time it was made and so far as we are aware the board had not prior to

the instant proceeding interpreted the statute in a manner contrary to the interpretation we placed upon it. That is a matter to which the courts give some weight. Laramie Rivers Co. v. Le Vasseur, 65 Wyo. 414, 202 P.2d 680, 690. Secondly, the change did not purport to cover the comprehensive statutory changes necessary for a solution of the problem—now, in part at least, accomplished in the Wyoming Administrative Procedure Act. Additionally, as indicated in York v. North Central Gas Co., 69 Wyo. 98, 237 P.2d 845, 847, if the word "shall" were to be interpreted as an overall directive there would be occasions when it would infringe upon the jurisdiction of the courts as conferred by the constitution and we would perforce interpret the change as directory only. A case somewhat analogous to the instant case is that of Van Buskirk v. Red Buttes Land & Live Stock Co., 24 Wyo. 183, 156 P. 1122, rehearing denied 160 P. 387, dealing with the use of the waters of the state. There the plaintiff brought an action in the court seeking damages for the wrongful diversion of water by a junior appropriator. The statute, among other things, provided "It *shall* be the duty of the said water commissioner to divide the water of the natural stream or streams of his district" (emphasis supplied), § 801, W.C.S.1910. Plaintiff had not sought the aid of the commissioner and the court directed a verdict for the defendant on the ground that the foregoing was the exclusive remedy. That action was reversed for the reason that the above provision was held to supply a cumulative remedy rather than an exclusive remedy but in doing so we made this pertinent comment, 156 P. at 1124:

"* * * The statute creating the office of water commissioner and prescribing the duties thereof does not expressly abrogate any of the common-law remedies of one who has been wrongfully deprived of the use of water to which he is entitled, nor can we find anything therein to justify a holding that the right to resort to such remedies is taken away by implication. * * *"

It is realized, of course, that this case and its progenitor, Farm Investment Co. v. Carpenter, supra, were cases dealing with priorities but the rationale of those cases was brought clearly into play in Louth v. Kaser, supra, which specifically dealt with the amended statute on the matter of abandonment, and inherent in the holding was the concept that the remedy afforded by the board was cumulative. It is our view then that the most weight that can be given to the amendment is the expression of an intent by the legislature that abandonment proceedings should be initiated before the board when consistent with the fundamental law of this state.

How best then do we make effective such expression of intent and the apparent desire of the legislature and of this court? After full consideration of all of the ramifications that might possibly arise and reminding that our only purpose here is to correct the intolerable situation now prevailing with respect to questions and issues of abandonment, we have concluded that the most satisfactory solution to the problem is resort to the well established doctrine of primary jurisdiction. We see no need for elaborate discussion of the origin of the doctrine and the circumstances under which it has been utilized. A complete and exhaustive treatise on the doctrine will be found in 3 Davis Administrative Law Treatise, §§ 19.01 through 19.09 (1958) and the 1970 supplement. As the author says:

"The doctrine of primary jurisdiction determines whether the court or the agency should make the initial decision." § 19.01, p. 2.

See also McCleneghan v. Union Stock Yards Co. of Omaha, 8 Cir., 298 F.2d 659. One of the latest expressions on utilization of the doctrine is that contained in Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Trans-Atlantic, 400 U.S. 62, 91 S.Ct. 203, 208, 27 L.Ed.2d 203, 208, where it was said:

"Transatlantic argues that the District Court erred at the outset in referring the

case to the Commission. But this Court recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge. See Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S. Ct. 350, 51 L.Ed. 553 (1907). The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed. When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved. * * * "

Actually, in resort to the doctrine we accomplish little more than we originally intended to accomplish except that we are here endeavoring to remove any doubt and at the same time be more definitive as to procedure. As previously recognized, in those rare cases filed in the district court where a declaration of abandonment not theretofore obtained is the principal or only relief sought perhaps the most practical approach would be to dismiss the complaint and relegate the parties to the remedy afforded by the board. That, however, would hardly be consistent with our holding of concurrent jurisdiction. At the same time we also recognized that in many cases the issue of abandonment is entertwined with other issues—raised either by the plaintiff or by the defendant in an answer or counterclaim—of which jurisdiction is vested exclusively in the courts, and it is in those instances that application of the doctrine is acute and most difficult. By way of firming up the procedure initially suggested of utilizing the board "somewhat along the lines provided in Rule 53, W.R.C.P., for masters," Kearney Lake, Land & Reservoir Company v. Lake De-Smet Reservoir Company, Wyo., 475 P.2d 548–550—which incidentally will remain in effect until such time as the board acts in keeping with what we now propose—we

have concluded that the board following the issuance of this opinion should promptly proceed to adopt a rule or amend its present rules whereby upon certification to the board by the district court of a factual issue, such as the issue of abandonment, for initial determination the board would accept jurisdiction and proceed in its regular manner or in a legal manner acceptable to it to make that determination. Upon completion of the board's proceeding, the findings, conclusions, and order determining the matter, including the record made if a party or the parties desire it, could then be certified by the board to the district court. This would enable the district court first to review the board's proceedings in keeping with the provisions of § 9–276.32, W.S.1957 (1969 Cum.Supp.), and our Rule 72.1, W.R.C.P., if a party so desires. Upon completion of that task the district court would then be enabled to consider and dispose of whatever matters remained for disposal of the litigation.

In application of the doctrine of primary jurisdiction much must, of course, be left to the discretion of the district court. As stated by Justice Harlan in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 165, 1 L.Ed. 2d 126:

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. * * * "

We have every confidence, however, that our district judges will be of great assistance in our efforts by this limited step to make meaningful a procedure to place in proper perspective the relationship of the function of the courts and the function of administrative agencies in matters entrusted to their care.

The former opinion is supplemented to the extent above indicated and in all other respects is reaffirmed.