**ZEZAS RANCH, INC., and Lulu Zezas, Appellants (Respondents and Petitioners),**

v.

**BOARD OF CONTROL, State of Wyoming, Appellee (Respondent),**

Leo Tass, Johnson-Rogers Cattle Company, Inc., Preston and Nina Bolinger, John W. and Eileen Daley, and Roy R. and Mary E. Schedlock, Appellees (Petitioners and Respondents).

No. 85–78.

Supreme Court of Wyoming.

Feb. 20, 1986.

Rehearing Denied April 11, 1986.

David F. Palmerlee, of Omohundro and Palmerlee, Buffalo, for appellants.

A.G. McClintock, Atty. Gen., and John D. Erdmann, Asst. Atty. Gen., for appellee Board of Control, Henry A. Burgess and Kim D. Cannon of Burgess & Davis, Sheridan, for remaining appellees.

Before THOMAS, C.J., and ROONEY,* BROWN and CARDINE, JJ., and RAPER, J., Retired.

ROONEY, Justice, Retired.

This is an appeal from a district court order affirming the action of the Board of Control which quantified Priority No. 2 on Crazy Woman Creek. Appellants word the issues on appeal as follows:

"(a) Was quantification of the No. Two Priority under the Crazy Woman Decree within the jurisdiction of the Board of Control?

"(b) Was quantification of the No. Two Priority under the Crazy Woman Decree *res judicata?*

"(c) Did Appellees have standing to seek quantification of the No. Two Priority under the Crazy Woman Decree?

"(d) Was the Crazy Woman Decree an ordering of vested water rights by priority and quantity in 1889?

"(e) Is the territorial court presumed to have acted in conformity with the law which required it to quantify the No. Two Priority under the Crazy Woman Decree?

"(f) Was quantification of the No. Two Priority under the Crazy Woman Decree by the Board of Control, under the law of the case, supported by substantial evidence and contrary to law?

"(g) Are Appellants entitled to divert and use up to the decreed amount of the No. Two Priority for beneficial use in accordance with Quinn et al. v. John Whitaker Ranch Co. et al.?"

The water rights from Crazy Woman Creek were adjudicated in 1889 by the territorial district court pursuant to the judicial adjudication statutes, Ch. 61, § 15, Session Laws of Wyoming Territory (1886). The Crazy Woman Decree concerning this adjudication was issued by that court on July 5, 1889, prior to Wyoming's statehood and prior to the establishment of the Board of Control.

Priority No. 2 of the Crazy Woman Decree reads as follows: [1]

"PRIORITY No. 2.

"That John R. Smith and Agnes D. Smith the owners of the John R. Smith Ditch, by original construction thereof shall be entitled through said ditch to so much water from Crazy Woman Creek and its several tributaries, as may be necessary and useful for the irrigation of 1200 acres of land lying thereunder, not to exceed 67 and $^{9}/_{100}$ cubic feet of water per second of time and the same shall be Priority No. 2."

On April 21, 1975, appropriators junior to Priority No. 2 filed a petition for a partial declaration of abandonment. This petition was later amended to include a prayer for quantification of Priority No. 2. On August 17, 1977, the Board of Control entered its decision that neither side had proved abandonment, and that it did not have jurisdiction to consider the prayer for quantification. On review, the district court remanded the matter to the Board of Control, holding that the latter did have jurisdiction

---

* Retired November 30, 1985.

1. Appellants Zezas Ranch, Inc. and Lulu Zezas are the present owners of Priority No. 2.

to determine the amount of water "necessary and useful" under Priority No. 2, as that amount had not been previously quantified.

The Board of Control, on March 14, 1984, issued the order being reviewed here. That order quantified Priority No. 2 at one cubic foot per second per 70 acres of irrigated land for 1200 acres. The district court affirmed this order, and the present appeal was brought.

## JURISDICTION

### Issue (a)

■ Appellants first contend that the Board of Control lacks jurisdiction to quantify a single water right, as opposed to having jurisdiction to conduct an entire streamwide adjudication. The district court clearly had jurisdiction to interpret the Crazy Woman Decree under the situation in this case. In so doing, the district court found an omission in the Crazy Woman Decree. It was, then, appropriate for the district court to call upon the state agency with expertise in this area, i.e., the Board of Control, to ascertain the facts necessary to correct the omission.

We have approved this procedure before. In the case of *Kearney Lake, Land & Reservoir Company v. Lake DeSmet Reservoir Company*, Wyo., 487 P.2d 324 (1971), we discussed the relationship between the Board of Control and the district court in regard to jurisdiction over abandonment proceedings. Two relationships being proposed, that of concurrent jurisdiction in the two entities and that of exclusive jurisdiction in the Board of Control, we chose to adopt a third: that of primary jurisdiction in the Board of Control. We said there:

"'* * * [C]oordination between traditional judicial machinery and these agencies was necessary if consistent and coherent policy were to emerge. See *Texas & P.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). The doctrine of primary jurisdiction has become one of the key judicial switches through which this current has passed. When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved. * * * '" *Id.*, 487 P.2d at 328, quoting from *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Trans-Atlantic*, 400 U.S. 62 [68], 91 S.Ct. 203, 208, 27 L.Ed.2d 203, 208 (1970).

This being said, we note that we will save for a later case the question of whether or not the Board of Control would have had jurisdiction initially to quantify a single water right.

## STANDING

### Issue (c)

Although appellants word this issue as concerning standing to "seek quantification" of the water right here involved, their argument is directed toward standing to attack an already quantified water right on the basis of abandonment or condemnation. They refer us to recent decisions of this Court concerning abandonment: *Cremer v. State Board of Control*, Wyo., 675 P.2d 250 (1984), and *Platte County Grazing Association v. State Board of Control*, Wyo., 675 P.2d 1279 (1984).

An abandonment theory was contained in the pleadings in this case, but the case was processed on the quantification issue. Appellees hold water rights junior to Priority No. 2 which will not be satisfied if the water allowed to Priority No. 2 is greater than the quantity allocated thereto as "necessary and useful." In effect, appellees are requesting the determination of the amount allocated to Priority No. 2 in order that proper administration of the water rights can be had, rather than an abandonment or condemnation of an already established quantity of water—which must be accomplished under the specific statutes relative thereto.

■ As holders of junior water rights in a stream, appellees certainly have standing

to contest the administration of water that is not quantified by the adjudication of the water right.

Recognizing that the original position in the matter was premised primarily on abandonment, standing existed even at that time. The cases relied upon by appellant are easily distinguished. Cremer involved a senior water right seeking abandonment of a junior water right—a different situation than in this case. Platte County Grazing Association involved the amount of land to which the water was being applied and not the quantity of water being used.

In *Laramie Rivers Company v. Wheatland Irrigation District*, Wyo., 708 P.2d 20 (1985), we said that a fundamental aspect of the standing doctrine is that one who presses an issue must allege "a personal stake" in the outcome, so as to guarantee a full and complete adversarial presentation of the case. We went on to say:

"The standing requirements of § 41–3–401(b) [2] mandate that the petitioner must be possessed of a *water right* that is being abridged either by *misuse* (misapplication), as was the case in Platte County Grazing Association, or nonuse as the junior appropriator contends here. * * * *" (Emphasis in original; footnote omitted.) 708 P.2d at 28.

Appellees in this case alleged a misuse of water in that they contended that either an abandonment or a quantification was proper. They hold junior water rights which will not be satisfied absent some requested relief, due to the lack of water in the stream to satisfy all appropriators. They had standing to request relief.

## QUANTIFICATION

### Issues (b), (d), (e) and (g)

These issues are all interrelated and may be considered together. Basically they boil down to the question: Did the Priority No. 2 portion of the Crazy Woman Decree, supra, specify the amount of water "necessary and useful for the irrigation of 1200 acres of land lying thereunder"?

■ The Priority No. 2 water right, along with others, was adjudicated pursuant to the judicial adjudication statutes, which provided for a declaration of existing water rights establishing the priority "with the amount of water which shall be held to have been appropriated by such construction and enlargement." Appellants argue that since the statutory duty pursuant to the territorial act was to establish the amount of each existing water right, we must assume that such was done. However, to so assume would be to ignore the plain language of the Crazy Woman Decree itself. The Crazy Woman Decree sets the amount of water for Priority No. 2 at that amount "necessary and useful for the irrigation of 1200 acres of land * * * not to exceed 67 and $^3$/100 cubic feet of water per second of time." The Crazy Woman Decree does not state what amount of water is "necessary and useful." Regardless of what the territorial court was or was not required by law to do, it is clear from the document itself that no definite quantity of water was set forth in the Crazy Woman Decree.

Thus appellants' res judicata argument also fails.

"In this jurisdiction the doctrine of res judicata and the related doctrine of collateral estoppel have been recognized in a number of decisions over the years. *Barrett v. Town of Guernsey*, Wyo., 652 P.2d 395 (1982); *Roush v. Roush*, Wyo., 589 P.2d 841 (1979); *Bard Ranch Company v. Weber*, Wyo., 557 P.2d 722

2. Section 41–3–401(b), W.S.1977, provided:

"When any water user who might be affected by a declaration of abandonment of existing water rights, desires to bring about a legal declaration of abandonment, he shall present his case in writing to the state board of control. The board has exclusive original jurisdiction in water right abandonment proceed-

ings. The board shall, if the facts so justify, refer the matter to the superintendent of the water division where the abandonment is claimed to have occurred. The total absence of water to divert during an irrigation season precludes the inclusion of any such period of nonuse resulting therefrom in the computation of the successive five (5) year period."

(1976); *Blount v. City of Laramie,* Wyo., 510 P.2d 294 (1973); *Knight v. Boner,* Wyo., 459 P.2d 205 (1969); *Rubeling v. Rubeling,* Wyo., 406 P.2d 283 (1965); *Lee v. Brown,* Wyo., 357 P.2d 1106 (1960); *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670 (1935), reh. denied 49 Wyo. 296, 54 P.2d 814 (1936); and *Cook v. Elmore,* 27 Wyo. 163, 192 P. 824 (1920). See also *Price v. Bonnifield,* 2 Wyo. 80 (1878). As recognized in this state, these doctrines incorporate a universal precept of common-law jurisprudence to the effect that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies.' *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), quoting from *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). These doctrines are founded upon the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation. The necessity for sustaining this social interest is the justification for the doctrines of res judicata and collateral estoppel. *Montana v. United States,* supra, 440 U.S. at 153–154, 99 S.Ct. at 973–74; *Barrett v. Town of Guernsey,* supra, 652 P.2d at 398–399; and *Rubeling v. Rubeling,* supra, 406 P.2d at 284. These doctrines, which inhibit the relitigation of claims or issues upon which there has been a full and fair opportunity to litigate in a court of competent jurisdiction, promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources." *Delgue v. Curutchet,* Wyo., 677 P.2d 208, 213–214 (1984).

" * * * [T]he doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." 46 Am.Jur.2d Judgments § 394 (1969).

No court has previously determined the issue in this case. Appellants inaccurately say in their brief that the appellees

" * * * selected one appropriator, the Zezas family, hauled them before the Board by force of law and sought to compel them to *affirmatively prove* their water right, though the water right was judicially determined 95 years ago in a proceeding in which their predecessors in interest participated." (Emphasis in original.)

Appellants' water right was not fully determined 95 years ago—the amount of water was never quantified. That which was decided by the Crazy Woman Decree, i.e., the date of priority, the number of acres, and the right to water "necessary and useful" for the irrigation of those acres, is not being relitigated here; it is the amount of water which is "necessary and useful" for such purpose and which was never before quantified that is now at issue. That issue is not res judicata.

In issue (g), appellants argue that the case of *Quinn v. John Whitaker Ranch Co.,* 54 Wyo. 367, 92 P.2d 568 (1939), is directly on point and requires a reversal. Appellants' reliance on *Quinn* is misplaced.

*Quinn v. John Whitaker Ranch Co.* did involve a water right adjudicated by the territorial district court prior to our present water statutes. However, a controlling difference is that in *Quinn* a specific amount of water was quantified by the 1889 decree. It specifically set forth the exact "cubic feet of water per second of time" allocated to the water right. Referring to the later statutorily imposed limit of one cubic foot per second per 70 acres, we said in *Quinn,* 92 P.2d at 571:

"We do not find in the statutes any expression of legislative intention to impose any other limitation on the quantity of

water that may be used under rights adjudicated by Territorial courts. * * "

However, we also said there that because of the nature of a water right, the limit of beneficial use would exist even in the absence of any statute.

"* * * The waters belong to the public or the state, and an appropriator cannot acquire a right that permits him to use more than is reasonably necessary for beneficial purposes. * * * " 92 P.2d at 571.

In *Quinn* we held that a later enacted statutory limit on the quantity of water would not affect a water right adjudicated by the territorial district court. Such is true in this case. The issue in the two cases is different. A definite quantity was adjudicated in the *Quinn* case by the territorial district court. It was not adjudicated in this case. The concept of beneficial use, even though styled "necessary and useful" in the decree in question, controls. The statutory one cubic foot per second per 70 acres does not. The district court recognized this when it remanded the matter to the Board of Control with the direction that the Board of Control quantify the amount of water to which appellants are entitled, based on the "necessary and useful" language from the Crazy Woman Decree. The district court directed:

"That in determining the amount of water that is 'necessary and useful' under the particular priorities in the Crazy Woman Decree of July 5, 1889, the Board of Control may consider the standard of one cubic foot per second of time for each seventy acres as one of the measurements commonly accepted in the State of Wyoming as what is 'necessary and useful', but the Board is not precluded from considering a greater historical beneficial use in quantifying the beneficial use under each priority."

## SUFFICIENCY OF EVIDENCE

### Issue (f)

Our usual standard of appellate review requires that we afford great deference to that done by the trial court; however, when the trial court sits in an appellate role, as here, we afford said deference to the fact finder, which in this case was the Board of Control. *Board of Trustees of School District No. 4, Big Horn County v. Colwell*, Wyo., 611 P.2d 427 (1980); *Wyoming Public Service Commission v. Hopkins*, Wyo., 602 P.2d 374 (1979).

In arriving at its conclusion, the Board of Control heard arguments by the parties, gathered additional information on its own initiative, conducted detailed examinations of map exhibits and received a clarifying stipulation relative thereto from the parties, reviewed the entire administrative record of prior proceedings which included the original hearing transcripts and exhibits, and personally observed the ditch site during a one-day field trip. From all of this information, coupled with its special expertise, the Board of Control concluded, among other things, that:

"1. * * * [O]peration of the ranches in the Crazy Woman Creek drainage area follows the general irrigation practice which is common throughout the State of Wyoming. * * * The irrigation water is used to grow native hay, alfalfa, and other crops. * * * The irrigation from Crazy Woman Creek is commenced somewhat earlier than average because of an early snow melt, but the general pattern is similar to that throughout Wyoming."

Also, the Board of Control found that lands irrigated under the appropriations involved in this case are typical of much of the irrigated lands in other counties, which other lands are successfully irrigated on the basis of one cubic foot per second of water per 70 acres of land. Thus,

"* * * a maximum delivery rate of one c.f.s. per seventy acres during the period when water is available for diversion from Crazy Woman Creek is the amount of water that is necessary and useful for the irrigation of the lands involved in this case * * *."

With the applicable standard of review in mind, we find that the whole record contains substantial evidence to support the

findings of the Board of Control and to uphold the decision of the district court.

Affirmed.