CENTRAL R. CO. OF NEW JERSEY v. HITE et al.

(Circuit Court, E. D. Pennsylvania. January 28, 1909.)

No. 16.

1. COMMERCE (§ 89*) — INTERSTATE TRANSPORTATION—CONSTRUCTION OF RULES— JURISDICTION OF COURTS.

A Circuit Court of the United States has jurisdiction to determine in the first instance the question of the indebtedness of a shipper to a railroad company for demurrage, under the rules adopted by the company and filed with the Interstate Commerce Commission, where it depends on the construction and not upon the reasonableness or unreasonableness of such rules, although the latter question is primarily one for the commission.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

2. CARRIERS (§ 100*) — DEMURRAGE — CONSTRUCTION OF RULES — "DATE OF ARRIVAL"—"DATE RELEASED."

In rules of a railroad company requiring the payment of demurrage on cars where more than a stated number of days elapse "between the date of arrival of each car and date released," the phrase "date of arrival" must be construed in its ordinary sense, as meaning the date on which the car in fact arrives at its point of destination, and not the date on which the consignee receives notice of such arrival, and "date released" as meaning the date when the car becomes again available for use by the company.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 100.*

Quick dispatch—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 342.]

On Rule to Open Judgment.

James McMullan and Abraham M. Beitler, for plaintiff.

D. Stuart Robinson and Wm. A. Glasgow, Jr., for defendants.

J. B. McPHERSON, District Judge. In August, 1906, the defendants (who were dealers in coal) made an agreement with the plaintiff, of which the provisions now important are as follows:

"For a valuable consideration, the undersigned do hereby promise and agree to and with the Central Railroad of New Jersey, that they will from time to time, and at all times hereafter, well, truly and punctually pay to the Central Railroad of New Jersey all moneys which now are or hereafter shall become due by the undersigned to, or be collectible by, the Central Railroad of New Jersey, as and for tolls, freights and charges, or either, on coal or coke passing over the railroads and canals operated by the Central Railroad of New Jersey, or any part thereof, or which shall become due by the undersigned to, or be collectible by, the Central Railroad of New Jersey for any freights, tolls and charges whatsoever. * * *

"And the undersigned do further authorize any attorney of any court of record, upon filing a copy hereof, accompanied by an affidavit of an officer or agent of the Central Railroad of New Jersey of the amount due under the foregoing agreement to sign an agreement for entering an amicable action, and to confess judgment therein against them for such amount, with release of errors and waiver of any exemption, and without stay of execution."

On October 30, 1907, a copy of this agreement, accompanied by an affidavit of the general auditor of the Central Railroad, was filed in this court, and judgment was confessed against the defendants for $3,291 and interest. This sum was claimed to be due for demurrage

charges upon cars of coal that had been shipped from points in West Virginia and Pennsylvania, and (in violation of the plaintiff's rules) had been detained in its yards at Elizabethport and Port Liberty in the state of New Jersey. The defendants conceded their liability for $1,932, and this sum was paid within a few days and credited upon the judgment. On November 6, 1907, a rule was granted to show cause why the judgment should not be opened and the defendants permitted to defend against the remaining sum of $1,349. To this rule an answer was filed, and upon the issues thus made the depositions of several witnesses have been taken.

The questions for decision arise in this manner: On March 28, 1907, the plaintiff filed with the Interstate Commerce Commission the following schedule of rules concerning demurrage charges on anthracite and bituminous coal and coke that might be held for transshipment at Port Liberty, Elizabethport, and several other places on New York Harbor in the state of New Jersey:

"Rule 1. On and after May 1, 1907, all cars of coal and coke held for transshipment by water more than five days per car, upon the average computed by the month, and exclusive of Sundays and legal holidays, shall be subject to demurrage, representing service of cars, at the rate of $1 per car per day after said five days. (See rule 3.)

"Rule 2. Statements of these charges shall be made up monthly and shall include only cars that are released during the month covered by such statements.

"Rule 3. In computing time of detention, first ascertain the total number of days between the date of arrival of each car, and date released, from which total deduct the number of Sundays and holidays intervening. From the total figures obtained in this manner for all cars handled for a consignee during the month shall be deducted the product of the number of such cars multiplied by five, the remainder, if any, being the number of days per car for which demurrage will be charged.

"Rule 4. When lading is reconsigned, or sold on track at destination, demurrage charges shall be applied as per rule 1, and the days of detention of any car shall follow that car and be charged to the account of the new consignee. In no event shall more than a total of five days free time be allowed on any car.

"Rule 5. Demurrage charges will be collected either from the consignor or consignee, as are the transportation charges, and all charges must be paid or guaranteed before cars are unloaded."

The present dispute has to do solely with the construction of these rules, especially with the meaning of the phrases "date of arrival" and "date released" in rule 3, and this dispute, I think, the Circuit Court has authority to determine in the first instance. The plaintiff's counsel contended that, if the defendants complain of these rules, redress must be sought from the Interstate Commerce Commission; and that, if the Circuit Court has any power in the premises at all, it can exercise none until the commission has heard and acted upon the complaint. In support of this position, Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, is cited. As it seems to me, however, that decision is not controlling in the situation now being considered. As is stated in the syllabus, the court ruled that

"The interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) was intended to afford an effective and comprehen-

sive means for redressing wrongs resulting from unjust discriminations and undue preference, and to that end placed upon carriers the duty of publishing schedules of reasonable and uniform rates; and, consistently with the provisions of that law, the shipper cannot maintain an action at common law in a state court for excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier according to the act, and had not been found to be unreasonable by the Interstate Commerce Commission."

Or, to use the court's own language on page 448 of 204 U. S., page 358 of 27 Sup. Ct. (51 L. Ed. 553):

"A shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule because the rates fixed therein are unreasonable."

But it will be observed that the point immediately presented here is not the reasonableness of the demurrage charges, but the scope or meaning of the rules by which these charges are computed. This is a preliminary question which must be determined before the reasonableness of the charges can be properly reached, and I think the Circuit Court not only has authority, but is bound, to consider and decide that controversy, as it is now presented. A judgment has been confessed in this court by virtue of a power contained in a written agreement. The agreement authorizes a confession for "the amount due" thereunder, and this sum is explained to include "all moneys which now are or hereafter shall become due, etc., for tolls, freights and charges, or either, on coal or coke." The dispute, therefore, distinctly raises the question whether the amount for which judgment was entered was properly "due for charges on coal," and this question can only be answered by deciding whether the amount of the judgment was warranted by the demurrage rules. If it was thus warranted, the judgment was properly entered; if these rules have not been followed, the judgment should be opened and a defense permitted.

Turning, then, to the construction of the rules, the court is met by the defendants' objection that in computing the time of detention the plaintiff has erroneously taken as the terminus a quo the date when a given car arrived in the yards. They contend that the car cannot properly be said to have arrived until they have received notice of such arrival, and they point out some inconveniences that attend any other view. It appears that the plaintiff has usually given them notice of a car's arrival by sending a postal card through the mail, and it often happens in the course of events that the notice is not received until one or two days after the car actually reached the yards, and in some instances the notice has miscarried and has not been received at all. They also urge upon the court the difficulty of following their cars from the point of initial shipment, and aver that, as they are practically compelled to rely upon the notice mailed by the plaintiff for information concerning the arrival of the car, the "date of arrival" should be construed to mean the day when they receive notice that the car has reached its destination. They carry this argument to its logical conclusion, and insist that the car does not "arrive" if the notice

should fail to reach them. As it seems to me, however, these and some other considerations cannot now be allowed much, if any, weight. In my opinion, I have nothing to do at present with the reasonableness of the rule; I am only called upon to construe it—to determine its proper meaning; and in discharging this duty I am bound to follow the ordinary and well-established canons of construction. Among these it is fundamental that words shall ordinarly be given their plain and natural meaning, and nothing has been offered here, either in the testimony or in argument, to justify an abandonment of this guide. In ordinary speech, "date of arrival" has only one meaning—certainly only one meaning in plain sight—namely, the day when a loaded car reaches its destination; and I can see no ground upon which the conclusion can be properly rested that it means the day when the consignee receives notice that the car has reached the end of its journey.

So, too, with the meaning of the phrase "date released." The defendants' position was that a car was "released" when they had furnished a vessel into which the car was to be emptied, and had registered the vessel at the plaintiff's dock so as to secure its turn, although the car might not be actually unloaded for a day or two afterwards. Some attempt was made to prove that the word "released" had acquired a trade meaning that would support this position, but the attempt fell so far short of meeting the legal requirements concerning amount and quality of proof that I do not think it necessary to discuss the testimony that was offered. A trade meaning not having been established, it seems clear that the defendants' position cannot possibly be supported in the face of the ordinary and apparent meaning of the word. To my mind, the plaintiff's construction is correct, namely, that "date released" means the day when the car becomes again available for transportation, when it is relieved from one service and is free to enter upon another. A car may be "released" in several ways. It may be reconsigned, or its contents may be sold on the track in the yards—both these contingencies are contemplated in rule 4—or it may be unloaded into a vessel. In either event it is once more at the plaintiff's command; actually earning freight, if it has been reconsigned to a new destination, or ready to earn freight in the other two cases. I say nothing about the desirability of fixing the terminus ad quem of the demurrage computation in the method contended for by the defendants. This may or may not be a better method than has been adopted by the plaintiff; the existing rules may or may not be unreasonable; with these questions I am not now concerned. My duty at present is simply to get at the meaning of the phrase in dispute as it is used in the rules that have been filed with the Interstate Commerce Commission; and, as I have already stated that I believe the plaintiff's position on this point to be correct, I need not dwell upon the subject.

If I have been right thus far, it follows that the judgment was entered for the proper sum, since the amount was computed according to what I think is the true meaning of the plaintiff's rules. But it does not follow that this application to open the judgment should be immediately dismissed. The reasonableness of the demurrage rules is

still an open question, and upon this point the Supreme Court has decided that the commission must first be applied to before the defendants can invoke the power of the Circuit Court. In order, therefore, to permit the proper complaint to be made, I shall wait until April 1st before finally disposing of the pending application, unless the defendants agree that it may be dismissed before that date in order that they may have a final order from which to appeal. If no complaint is made to the commission before April 1st, the clerk is directed to mark the rule to open the judgment discharged. If complaint is duly made to the commission, I reserve for future consideration the question what the further action of the Circuit Court should be.