## JURISDICTION OVER CLASSIFICATIONS ESTABLISHED BY CARRIERS.

Common Pleas Court of Hancock County.

SOCIALIST CO-OPERATIVE PUBLISHING CO. v. AMERICAN EXPRESS CO. ET AL. *

Decided, September Term, 1911.

*Carriers—Classification of Merchandise Shipped by Express—Rates on Printed Sheets Shipped to Newspapers in Which They Are to be Incorporated—Sections 614-1 et seq.*

1. Printed sheets issued in one city for incorporation in sundry newspapers published in other cities and shipped thereto by express, do not fall within the classification "auxiliary" as used in the schedule of the defendant company relating to newspapers.
2. In the absence of a specific classification for such sheets they must fall under the general classification covering publications not registered as second-class matter.
3. But the matter of discrimination in classification or of rates for interstate transportation is a question for determination by the Interstate Commerce Commission, and for interstate transportation by the Public Service Commission of Ohio; and the courts are without original jurisdiction with reference thereto.

*George H. Phelps,* for plaintiff, cited and commented upon Scofield v. Railway, 43 Ohio St., 571; State v. Railway, 47 Ohio St., 130; Texas & P. Ry. v. Oil Co., 204 U. S., 426; Abilene Cotton Oil Co. v. Railway, 38 Tex. Civ. App., 366; Gentsch v. State, 71 Ohio St., 151; Palmer v. Tingle, 55 Ohio St., 423;

---

* Affirmed by the Circuit Court on appeal upon the ground set forth in the third paragraph of the syllabus.

Western Union Tel. Co. v. Publishing Co., 181 U. S., 92; High, Injunctions, Section 31; Brown's Appeal, 66 Pa. St., 155; Pomeroy, Equity, Section 281.

*Dunn & Cole,* contra.

DUNCAN, J.

The plaintiff is a corporation located at Findlay, Ohio, and is the printer of weekly newspapers for local editors and publishers located elsewhere, at various cities and towns in the United States, and transports said newspapers to them by express. The defendant express company is a joint stock company engaged in intrastate and interstate transportation of commodities for hire, and, as such, is a common carrier, and has an office in said city with the defendant, Shaler, as agent in charge. Said express company has filed with the Interstate Commerce Commission as required by an act of Congress in that behalf and with the Public Service Commission of Ohio as required by an act of the General Assembly of this state and has published and promulgated its schedule of rates and classification of commoities for transportation for the information of the public as provided by both of said acts, and the same is posted in its said office.

Up to this time the plaintiff's printed matter, viz., completed weekly newspapers printed in Findlay for local editors located elsewhere, issued from and published at other cities and not registered in the United States Post Office as second-class matter, have been classified for transportation and express charges under the head of classification 20, N. Art. 10, as follows: "*Newspapers*—Auxiliary, Patent Insides, Newspaper Supplements containing reading matter or illustrations, and Reading Matter Plates, or Plates of Pictures or Drawings illustrating reading matter." The plaintiff claims this classification is proper and desires to have the same continued, and complains that the defendants now propose to change it so as to increase the rates heretofore charged. The plaintiff further claims that this increase of rates is confined to it alone, while its competitors engaged in the same business are to remain under the same classification as heretofore,

and, as a consequence, receive the same service at much less rates.    The prayer is for injunction.

The defendants take issue with the plaintiff as to the proper classification of its said printed matter, and say that the classification heretofore given the same was by mistake and upon incorrect information from the plaintiff as to what the packages thereof contained.    The defendants further deny that there has been any discrimination in classification or rates between the plaintiff and other shippers of like matter.

As to the controlling facts in this case there is but little, if any, controversy.    The fact that the plaintiff has been given a certain classification and rate paid up to this time, does not determine the right of either party to have that classification or rate continued.    The question is, was that classification right, or rather, is the classification now proposed for plaintiff's printed matter the proper classification according to such schedule?    Newspapers, according to this schedule of rates, are divided into three classes: first, daily; second, other than daily, which are registered in the United States Post Office as second-class matter, when shipped by publishers or news companies; and third, auxiliary.    It is not claimed that the plaintiff's papers come under either the first or second class, but it is claimed they come under the third, the clause of the classification above quoted.    "*Newspapers*, Auxiliary," or "Auxiliary newspapers," are such printed matter as adds to, completes or in some manner supplements or aids a main publication printed and published at some other point.    A help to the enterprise, as contended, is not what these words mean, but a help to the newspaper as a product.    The word "enterprise," "undertaking," "business," or other equivalent, does not appear, nor other words of qualification giving that meaning.

The plaintiff's printed matter, then, does not fall within either of the above named classes.    In fact, it is not "newspapers" in contemplation of this schedule, and is not specifically provided for other than as a "publication" under classification 20 of Article 21, as contended by the defendants, as follows: "All publications not registered in the United States Post Office as

second-class matter must be charged for as merchandise or Section D rates."

It is not to be determined here whether this matter ought to be specifically provided for other than as above stated, or what should be the rate to be charged for it, but whether the classification given it by the defendants is proper as the schedule now stands, and I believe it is.

The only discrimination complained of consists in the fact that a certain printing house in Fort Wayne, Indiana, was classified by the defendant express company at said city and paid rates under said Article 10, N., of classification 20, for the transportation of the same kind of matter to the plaintiff at Findlay, Ohio, during the same period the plaintiff was so classified and paid rates. There is no evidence to the effect that the defendant express company knowingly made such classification or gave such rates to said printing house, or at all after the same were denied to the plaintiff here at Findlay. If this is so, there was no discrimination of which the plaintiff can or ought to complain. If such classification and rates are continued to the Fort Wayne house or any other patron, and the plaintiff is denied them here, it is a discrimination against the plaintiff, and ought not to be permitted, but the evidence does not make a case of this kind. It is not only claimed that the plaintiff is discriminated against under this schedule, but that the schedule itself discriminates, in that a publisher of the paper is allowed a better classification and rate than one not a publisher for the same kind of matter. This may be defended as in the interest of education and allowed as in encouragement of him who is in the business. This objection is raised only in argument. The question is not made in the pleadings. However, this court has no jurisdiction of the question and has no jurisdiction of the question of discrimination already considered.

The reason is, that the plaintiff has a plain and adequate remedy at law. By an act of Congress, approved February 4, 1887, entitled, "An act to regulate commerce," as amended June 29, 1906 (34 U. S. Stat. at L., 584, et seq.), and again amended June 18, 1910, it is provided that the Interstate Commerce

Commission, created by the act, shall hear and determine all complaints of discrimination in classification or rates and the reasonableness of schedules on interstate transportation, and that by an act of the General Assembly of this state, Section 641-1, *et seq.*, General Code (102 O. L., 550), it is provided that the Public Service Commission of Ohio shall hear and determine all complaints of discrimination, etc., on intrastate transportation; and that jurisdiction is exclusive. This rule is laid down in *Texas & P. Ry.* v. *Oil Co.*, 204 U. S., 426, and followed in *Clemont* v. *Railway,* 153 Fed. Rep., 979, and *In re Twinbull,* 159 Fed. Rep., 281. The case involved excessive freight charges as being discriminating, unjust and unreasonable, to redress which, the court say was among the principal purposes of the act. By these acts, within the jurisdictional province of each, it is made the duty of such companies to charge only just and reasonable rates. To that end, they are required to make and publish schedules of such rates and strictly adhere to them and not change them until authorized by the commission and all unjust preferences and discriminations therein are forbidden under heavy penalty. The commission, either federal or state, is endowed with plenary administrative powers to supervise the conduct of such companies, to investigate their affairs, their accounts and their methods of dealing, and generally to enforce the provisions of the act with the purpose, among others, of establishing a schedule of reasonable rates, having a uniform application to all, changeable only in the manner set forth in the act. With this view, the rule is based upon the ground that if any rate could be held to be discriminatory, unjust or unreasonable by a court, and the collection of the same in the future enjoined, as sought here, it would come to pass that some shippers might obtain relief upon this ground through the holding of some court or other and thus obtain a preference or discrimination refused to others not parties to such action. For, if without previous action of the commission, courts take jurisdiction generally to determine the reasonableness, etc., of any rate, it would follow that, unless all courts reached the same conclusion, no uniform schedule or standard could be maintained. The stand-

ard would fluctuate and vary, dependent upon the different couclusions reached by the various courts passing upon the question, and lead to the enforcement of one rate in one jurisdiction and a different one in another, and in many cases, to one fixed by the courts, and another by the commission, in the same jurisdiction, and thus operate to destroy that uniformity and equality of rates which it was the very purpose of the act to establish. Such right in the courts is, therefore, inconsistent with the administrative power of the commission, to enforce this uniformity and equality of rates, and would render the enforcement of the act impossible.

As a further reason for the couclusion reached that the commission has exclusive original jurisdiction of such matters, a court of review of the proceedings and judgments of the commission is provided for in both of said acts, with a provisiion for the change or modification of the schedule in accordance with the action of the court in that behalf.

Holding these views, there will be a. finding for the defendants. The temporary injunction heretofore allowed herein is dissolved, and the petition is dismissed.   Judgment accordingly.   Appeal bond, $100.