### FIDELITY LUMBER CO. v. GREAT NORTHERN RY. CO.†

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 2,021.

1. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—POWERS—ORDERS.

The Interstate Commerce Commission has power to determine the reasonableness of rates and may award reparation, and in both respects, where the reparation arises from a re-establishment of rates, its conclusions, being administrative, are final and conclusive unless the commission has, in some particular material to the controversy, exceeded its prescribed functions.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

2. COMMERCE (§ 88*)—INTERSTATE COMMERCE COMMISSION—RAILROAD RATES—REPARATION.

Where the Interstate Commerce Commission, in readjusting freight rates, awarded reparation in certain cases involving rates on the Pacific Coast, but omitted to award reparation in another case for the reason that it involved an initial adjustment of territory or a very material readjustment of territory from points within which it was deemed proper that differentials should be allowed on shipments eastward over the coast rates, such readjustment of territory constituted a sufficient reason for the Commission's action, which was therefore conclusive.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

3. CARRIERS (§ 32*)—RATES—INTERSTATE COMMERCE—DISCRIMINATION.

Where an order of the Interstate Commerce Commission, readjusting territory and providing for additional differentials, merely awarded that Pacific Coast rates with their differentials as fixed by the Commission continue until the new schedule from the particular zones should be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied March 21, 1912.

come operative, and that the zone shippers were not entitled to the additional reparation on account of shipments made previous to the order establishing the new differentials, such order, in so far as it denied reparation, did not constitute real discrimination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83-85; Dec. Dig. § 32.*

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson C. Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Action by the Great Northern Railway Company against the Fidelity Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. M. Stephens, for plaintiff in error.

F. V. Brown, F. G. Dorety, and James B. Kerr, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. Prior to October 31, 1907, the Great Northern Railway Company, defendant in error, together with other carriers, published certain tariffs prescribing rates for the transportation of lumber, shingles, and other forest products, from points within to points without the states of Washington and Idaho, which were an increase above the lawful rates in force October 31, 1907; the said new tariff to become effective November 1, 1907. Prior to that time, a suit was instituted by the Pacific Coast Lumber Manufacturers' Association and others against the Great Northern Railway Company and others, in the Circuit Court for the Western District of Washington, to enjoin the enforcement of said new tariff until its reasonableness could be determined by the Interstate Commerce Commission. The injunction was issued, but as a condition thereof the court required the complainants to execute an undertaking to the carrier companies agreeing to pay them upon shipments of lumber made in the meanwhile the difference, if any there might be, between the old tariff rate and such as might eventually be found to be reasonable by the Interstate Commerce Commission; it being the idea that shippers would pay the old rate as shipments were made. Plaintiff in error, the defendant in the Circuit Court, was allowed to intervene in that suit, and executed the undertaking required of the original complainants. Later, namely, about June 2, 1908, the Interstate Commerce Commission determined the controversy and established tariff rates in some respects substantially different from both the old rates and the proposed new rates. In the interim the defendant in error transported, at the instance of the plaintiff in error, certain lumber, the charges for which exceeded the old tariff by the sum of $2,805.65, and the present action is for the recovery of that sum under the conditions of plaintiff's undertaking given in the

injunction suit. This lumber was transported from points within the Spokane group or zone to points east of the Pembina line.

To understand fully the conditions attending the controversy, it is necessary to note the action taken in several cases which were considered together by the Interstate Commerce Commission. These are cases known and designated as No. 1,327, Oregon & Washington Lumber Manufacturers' Association et al. v. U. P. R. R. Co. et al. (14 Interst. Com. R. 1); No. 1,329, Pacific Coast Lumber Manufacturers' Association et al. v. N. P. Ry. Co. et al.; No. 1,335, Southwest Washington Lumber Manufacturers' Association et al. v. N. P. Ry. Co. et al. (14 Interst. Com. R. 23); No. 1,348, Potlatch Lumber Company et al. v. N. P. Ry. Co. et al. (14 Interst. Com. R. 41). In cases numbered 1,327, 1,329, and 1,335, the Commission found that the rates on lumber and other forest products which were in effect immediately prior to November 1, 1907, from points in Oregon, Washington, Idaho, Montana, and British Columbia to all points on and west of a line drawn from Pembina, N. D., southward through several points mentioned to Port Arthur, Tex., which we designate as the Pembina line, observing the differentials prescribed by the Commission in case No. 1,348, were and are just and reasonable; that the rates from said points in Oregon, Washington, Idaho, Montana, and British Columbia to points east of the Pembina line, which were in effect on October 31, 1907, might be reasonably somewhat increased; but that such rates should not exceed the rates in effect immediately prior to November 1, 1907, by more than 5 cents per 100 pounds, and must be in conformity with the differentials prescribed by the Commission in case No. 1,348. It was further found that the complainants in the first three cases, namely, 1,327, 1,329, and 1,335, were entitled to reparation where charges were collected in excess of the rates between the same points which were in effect immediately prior to November 1, 1907, as follows:

"In instances in which the rates herein prescribed are not lower than the rates which were in effect betwen the same points immediately prior to November 1, 1907, such reparation should be measured by the difference between the rates actually paid and those herein prescribed; and that in instances in which the rates herein prescribed are lower than the rates which were in effect between the same points immediately prior to November 1, 1907, such reparation should be measured by the difference between the rates actually paid and those which were in effect between the same points immediately prior to November 1, 1907." 14 Interst Com. R. 20.

The tariffs regulated by these cases are known as the "Pacific Coast Rates." The order and judgment of the Commission was made effective as of November 1, 1907, the date the several railroads designed that their proposed tariff of rates on lumber and forest products should become effective. Under the tariff so adjusted, the plaintiff in error was entitled to charge 5 cents per 100 pounds in addition to the rates prevailing on October 31, 1907. The additional charge at this rate makes up the aggregate of $2,805.65 sued for.

In case No. 1,348, known as the "Potlatch Lumber Case," to which the plaintiff in error was a party plaintiff also, the complainants made no question as to the reasonableness of rates from Pacific Coast points,

but did challenge the reasonableness and justice of the rates upon forest products from shipping points within the Inland Empire or the Spokane district, and claimed that they should have a greater differential under such Coast points than formerly obtained. The Commission says, among many subjects of consideration, that:

"The reports and orders" in cases Nos. 1,327, 1.329, and 1,335, "decided concurrently herewith, necessarily control the disposition of this case."

The Commission further states that, after having decided the three cases named, the only matter left for consideration is the question of what differential, if any, Spokane should have under the rates from the Pacific Coast. The Commission then goes on to establish three groups or zones of territory as a basis for settling proper differentials; the area and limitations of the groups or zones being suggested by the carriers' new tariff schedules. The Spokane group is changed from what it was under the tariffs in force prior to November 1, 1907, in that it covers a more extended territory and embraces points formerly taking a lower rate than Spokane. The differentials under the Coast rates applying from this group to the various points of destination were also changed. Thus it was the Commission, acting with reference to the proposed new tariffs, rearranged the groups or zones and established rates with differentials accordingly. It was finally adjudged that rates from the Spokane Rates Group to points east of the Pembina line should be less than the Coast rates by a differential of not less than 3 cents per 100 pounds. There was no prayer for reparation attending the petition for establishment of rates in this case, and none was ordered. Subsequently petition was filed for rehearing in the cause, and for leave to file a supplemental petition, with prayer for reparation. After due consideration, it was determined that it was not and is not intended that reparation should be paid only to shippers actually parties to said cases (Nos. 1,327, 1.329, and 1,335), but it was and is intended that reparation shall be paid without discrimination to all shippers from points of origin covered by said cases, and the Commission further set forth its interpretation of its former order as follows:

"No reparation was prayed for in said case 1,348. Complaint in said case 1,348 did not bring in issue advanced rates of carriers, but it was a prayer for the establishment of new and higher differentials from Spokane territory under the Coast rates. It was and is the intention of the Commission that shippers from the Spokane territory shall have reparation under said cases 1,327, 1,329, and 1,335 as well as from any other territory covered thereby: but it was not and is not the intention of the Commission to award additional reparation because of the new differentials fixed in said case 1,348."

Reparation was therefore not awarded in case No. 1,348. On the same day the Commission entered an order in all the cases further interpreting the order in case No. 1,348, as follows:

"In case No. 1,348 we dealt with a petition for the establishment of new relationships between rates from certain points of origin, and established such relationships to be effective thereafter and not retroactively."

The plaintiff in error complains that reparation was not granted in case No. 1,348, as it was in the other cases, which would have resulted

in giving to the shippers from the Spokane group to points east of the Pembina line an additional reparation of 3 cents per 100 pounds; so that in the end, as applied to the present case, the defendant in error should be entitled to recover but 2 cents per 100 pounds of lumber freight carried instead of 5 cents—in other words, recovery by defendant in error should be for two-fifths only of· what is asked. The decision of the Circuit Court was favorable to the defendant in error; hence this writ to determine the correctness of that decision.

[1] It has been determined that the Interstate Commerce Commission has power to determine the reasonableness of rates, and likewise it is authorized to award reparation, and in both respects, where the reparation arises from a re-establishment of rates, its conclusions, being administrative, are final and conclusive, unless the Commission has in some particular material to the controversy exceeded its prescribed functions. Texas & Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Baltimore & Ohio R. R. v. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292.   In the Abilene Case it was said:

"Although an established schedule of rates may have been altered by a carrier voluntarily or as the result of the enforcement of an order of the Commission to desist from violating the law, rendered in accordance with the provisions of the statute, it may not be doubted that the power of the Commission would nevertheless extend to hearing legal complaints of and awarding reparation to individuals for wrongs unlawfully suffered from the application of the unreasonable schedule during the period when such schedule was in force."

[2] Now, the Commission in its wisdom awarded reparation in cases numbered 1,327, 1,329, and 1,335, by the difference between the proposed new rates and the rates established by the Commission where those so established were not less than such as obtained prior to November 1, 1907, because it was thought that the proposed rates were unreasonable.   The schedule of rates thus established by the Commission was allowed to become effective as of November 1, 1907, so that reparation was ordered upon carriage of lumber in the meanwhile; that is, between the date at which the rate was made effective and the date upon which the order was made and entered, to wit, July 2, 1908.   In case No. 1,348 the schedule of rates fixed by the Commission became effective by its order at the date on which the order was made, and not previously thereto.   This schedule related to particular zones, the Spokane zone being one of them, and new relationships were established by a rearrangement of the territorial limits of these zones.   Now, while it was deemed appropriate to award reparation in the first three cases involving the Coast rates, it was evidently thought to be inappropriate to award any reparation in case No. 1,348, for the reason, no doubt, that ·this was an initial adjustment of territory, or at least a very material readjustment of. territory, both new and old, from points· within which it was deemed proper that differentials should be allowed upon shipments eastward over the Coast rates.   This affords a good and sufficient reason for the Commission's action in the premises.   The arrangement as to territory being new, and the shippers being already entitled to such

reparation as was granted under cases Nos. 1,327, 1,329, and 1,335, the additional reparation sought was denied. As was said by the Commission, it was not its intention "to award additional reparation because of the new differentials fixed in said case 1,348."

[3] It is argued, however, that such an adjustment operates as a discrimination between shippers, the very thing that is prohibited by the act, and hence that the Commission acted beyond its authority. But there is no real discrimination when the time of taking effect of the respective schedules of rates as fixed by the Commission is considered in connection with the carving out of new and additional territory as a basis upon which to predicate additional differentials. It was simply an award that the Coast rates, with their differentials as fixed by the Commission, should continue until the time when the new schedule from the particular zones should become operative, and that the zone shippers were not entitled to the additional reparation on account of shipments made previous to the order establishing the new differentials.

These considerations lead to an affirmance of the judgment of the court below, and it is so ordered.