## THE PICTONIAN.

(District Court, E. D. New York. Nov. 26, 1924.)

### No. 1081.

**1. Treaties ⬤⟳2—Governments may by treaty authorize searches and seizures of foreign vessels.**

Though the right to search and seize ships of other nations for violation of the United States laws is limited by international laws, rulers or governments may by treaty agree not to complain of such action or agree that such search and seizure may be made.

**2. International law ⬤⟳10 — Vessels on high seas subject to laws and treaties of own country.**

Vessels on the high seas are subject to the laws of their own country and to treaties made by the sovereign or government of their country.

**3. Treaties ⬤⟳12—Treaty with Great Britain authorizing seizure of British vessels within certain limits held self-executing.**

The treaty between Great Britain and the United States of May 22, 1924, authorizing the seizure of vessels for certain violations of law within one hour's sailing distance of the coast, having been ratified by the Senate, is self-executing and needs no further legislation to insure its validity.

**4. Treaties ⬤⟳12—Legislation declaring certain acts crimes not prerequisite to enforcement of treaty provisions.**

Seizures and libels under treaty between Great Britain and the United States of May 22, 1924, in which Great Britain agrees to make no objection to the boarding and seizure of private vessels violating United States' laws within one hour's sailing distance of coast, *held* authorized as against objection that Congress has not by law declared acts denounced by Rev. St. § 3450 (Comp. St. § 6352), Tariff Act 1922, §§ 584, 586, 587, 593 (Comp. St. Ann. Supp. 1923, §§ 5841h3, 5841h5, 5841h6, 5841h12, 5841h13), and National Prohibition Act, §§ 3, 26, tit. 2 (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½mm), to be crimes when committed beyond 3 and 12 mile limits.

**5. Intoxicating liquors ⬤⟳250—Libel for forfeiture of British vessel under treaty held sufficient.**

A libel against a ship seized under the treaty with Great Britain of May 22, 1924, need

not allege that the ship was committing an offense at the time of the seizure, in view of article 2, subd. 2, of the treaty, where the libel alleges that such ship was attempting to make contact with an American vessel, and attempted to smuggle liquor into the United States.

**6. Intoxicating liquors ⚖➔247—Possession by British vessel without intent to smuggle into United States not cause for forfeiture.**

The mere possession of intoxicating liquor by British vessel beyond territorial limits of United States, without any intention to attempt to commit offense against United States laws, is no cause for forfeiture under the treaty with Great Britain of May 22, 1924, but to possess liquor within one hour's sailing distance. of the coast with intent to smuggle it into the United States is sufficient ground for forfeiture.

**7. Internal revenue ⚖➔46—Intoxicating liquors ⚖➔250—Libel for forfeiture of vessel under treaty with Great Britain not alleging vessel within one hour's sailing distance held insufficient.**

A libel for forfeiture of a British vessel for possession of intoxicating liquor in violation of prohibition and internal revenue laws, which contained no allegation as to location of vessel, nor that distance from coast to schooner could be traversed in one hour by vessel endeavoring to commit offense, *held* insufficient.

Libel of forfeiture by the United States against the schooner Pictonian, her tackle, apparel, furniture, papers, and engines. On exceptions and amended exceptions to the libel. Overruled in part, and sustained in part, with leave to amend.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y., and Robert W. Duvall, Asst. U. S. Atty., of Oyster Bay, N. Y.

Louis Halle, of New York City, for claimant.

CAMPBELL, District Judge. This is an action brought by the United States of America against the schooner Pictonian, her tackle, etc., in causes of forfeiture and penalty, civil and maritime, for breach of the provisions of section 3450 of the Revised Statutes of the United States (Comp. St. § 6352), sections 584, 586, 587, and 593 of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h–3, 5841h–5, 5841h–6, 5841h–12, 5841h–13), and sections 3 and 26, tit. 2, of the act of Congress approved October 28, 1919, and commonly known as the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½mm), and section 2 of article 2 of the Treaty between the United States and Great Britain, to aid in the prevention of the smuggling of intoxicating liquors into the United States, adopted May 26, 1924. The case comes before this court on the hearing of excep-

tions and amended exceptions to the libel filed herein.

The plaintiff in its libel alleges that each of the causes of forfeiture therein specified arose from a violation of article 2, section 2, of the Treaty between the United States and Great Britain, to aid in the prevention of the smuggling of intoxicating liquors into the United States, adopted May 26, 1924, and that the several causes of forfeiture also arose from a violation of the several sections of the Revised Statutes or other acts of Congress as hereinafter set forth:

Cause 1, § 3, of the National Prohibition Act.

Cause 2, § 584, of the Tariff Act of 1922.

Cause 3, § 586, of the Tariff Act of 1922.

Cause 4, § 593, of the Tariff Act of 1922.

Cause 5, § 3450, of the Revised Statutes.

To all of these causes the claimant has excepted. He urges that no authority exists in any United States Statute for the boarding and seizing of a vessel 14 miles from the United States coast, that the British treaty does not and cannot extend the right to search and seize beyond the 12-mile limit, and that aside from the question of illegality of seizure, each and every of the grounds of forfeiture in law is in itself defective and insufficient in law.

I do not agree wth the claimant.

[1] Of course, the right to search and seize the ships of other nationals, for violation of the laws of the United States, is limited by international law, but no country other than that of the ship seized would have any just cause of complaint, and I can see no reason why the ruler or government of that country may not by treaty agree not to complain of such action or agree that such search and seizure may be made.

[2] The vessels of a country on the high seas are subject to the laws of their own country, and this includes a treaty made by the sovereign or government of their country.

[3] Under the Constitution of the United States, the right to make treaties is vested in the President subject to ratification by the Senate, and the Constitution further provides, article 6, clause 2:

"2. This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

The treaty having been ratified by the Senate is self-executing and needs no further legislation to insure its validity.

There is nothing in the Constitution nor in the treaty itself which requires the passage of any further legislation to carry out the terms of a treaty. Foster v. Neilson, 2 Pet. (27 U. S.) 253, 7 L. Ed. 415.

[4] Claimant contends that the acts alleged against the vessel in the case at bar are not crimes because Congress has not by law declared such acts to be crimes when committed beyond the three or at most the twelve-mile limits, and that Congress is without power to make such acts crimes when committed beyond such limits.

This claim is not, in my opinion, well founded, because while Congress might under international law be without power to enact laws which without their consent would bind foreign nationals outside of the territorial limits of this country, I see no reason why any such foreign sovereign or government cannot either consent to the extension of the territorial limits of this country as to their ships, subjects, or citizens, or where, as in the treaty to which reference will be made, uphold the three-mile limit as the territorial limits of the United States, and at the same time agree not to object to the seizure within certain other defined limits, beyond the three-mile limit, and the forfeiture after adjudication by the courts of the United States of any vessel which has committed, is committing, or is attempting to commit any offense against the existing laws on any particular subject which had prior thereto been enforceable within the territorial limits of the United States, its territories or possessions.

As I read the treaty which will hereinafter be referred to, that is exactly what Great Britain has done, and such treaty binds her ships and subjects and has the effect of law, and perforce the laws of the United States relating to the particular subject are extended in their application to the ships and subjects of Great Britain within such additional limits, to accomplish the purpose in said treaty set forth, and the right to search and seize is given.

So much of the treaty between the United States and Great Britain to aid in the prevention of the smuggling of intoxicating liquor into the United States, dated January 23, 1924, which became effective May 22, 1924, as is necessary for consideration in the matter at bar, reads as follows:

"Article I. The high contracting parties declare that it is their firm intention to uphold the principle that 3 marine miles extending from the coast line outwards and measured from low-water mark constitute the proper limits of territorial waters."

"Article II. (1) His Britannic majesty agrees that he will raise no objection to the boarding of private vessels under the British flag outside the limits of territorial waters by the authorities of the United States, its territories or possessions in order that inquiries may be addressed to those on board and an examination be made of the ship's papers for the purpose of ascertaining whether the vessel or those on board are endeavoring to import or have imported alcoholic beverages into the United States, its territories or possessions in violation of the laws there in force. When such inquiries and examination show a reasonable ground for suspicion, a search of the vessel may be initiated.

"(2) If there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States, its territories, or possessions prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States, its territories, or possessions for adjudication in accordance with such laws.

"(3) The rights conferred by this article shall not be exercised at a greater distance from the coast of the United States, its territories, or possessions than can be traversed in one hour by the vessel suspected of endeavoring to commit the offense. In cases, however, in which the liquor is intended to be conveyed to the United States, its territories, or possessions by a vessel other than the one boarded and searched, it shall be the speed of such other vessel and not the speed of the vessel boarded which shall determine the distance from the coast at which the right under this article can be exercised."

"Article III. No penalty or forfeiture under the laws of the United States shall be applicable or attach to alcoholic liquors or to vessels or persons by reason of the carriage of such liquors, when such liquors are listed as sea stores or cargo destined for a port foreign to the United States, its territories, or possessions on board British vessels voyaging to or from ports of the United States, or its territories or possessions, or passing through the territorial waters thereof, and such carriage shall be as now provided by law with respect to the transit of such liquors through the Panama Canal, provided that such liquors shall be kept under seal continuously while the vessel on

which they are carried remains within said territorial waters and that no part of such liquors shall at any time or place be unladen within the United States, its territories, or possessions."

The right to search under the circumstances alleged in the case at bar seems, under the terms of said treaty, to be beyond question, and in my opinion the treaty was intended by both nations to and did deal with the matter in a complete way.

This was also the opinion of the court in U. S. v. Schooner Frances Louise, 1 F.(2d) 1004, decided in the United States District Court of Massachusetts, September 30, 1924, in which case the libel was dismissed on the ground that the government had failed to prove that the distance to the vessel libeled could be covered in our hour's sailing from shore by contact boat, but the court thoroughly considered the question of the validity of the treaty and held:

"I have great doubt whether any such broad right of seizure exists as the government contends. But it is not necessary to decide this question, because I am clearly of opinion that the whole situation is covered by the treaty. * * * It dealt explicitly with the case of liquor ships hovering on our coast and being visited by small boats from shore. Of course, such small boats only come to the hovering vessel to get contraband goods. Both parties understood that. The plain inference is that such trading does not render the hovering vessel amenable to seizure as long as she keeps to the high seas, except as provided in the treaty. I think both nations intended the treaty to deal with the matter in a complete way. If so, upon familiar principles of law, it is conclusive. See Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 427, 436, 437, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. The construction of it is a judicial question. Jones v. Meehan, 175 U. S. 1, at page 32, 20 S. Ct. 1, 44 L. Ed. 49. I have no doubt that it is constitutional."

[5] For the decision of the question now presented it is not necessary that the libel allege that the ship was committing an offense against the laws of the United States at the time of the seizure, because by the treaty, article 2, subdivision (2), supra, attempting to commit an offense against the laws of the United States is made a sufficient ground of seizure, and it is impossible to deny that a ship is attempting to violate the laws specified in the libel, even if such laws applied only within the three-mile limit, when it is alleged, as in the libel in the

action at bar, that the ship was off our coast attempting to make contact with an American vessel, motorboat K14622, and that it did attempt to smuggle intoxicating liquor into the United States.

Latham, Cowart and Schwarz v. United States of America, 2 F.(2d) 208, decided by the United States Circuit Court of Appeals, Fourth Circuit, October 21, 1924, in which case, in the absence of a treaty, the court said:

"One who ranges along the land or water line of any country with the design of aiding in the subversion of its laws challenges that country to enforce its laws and assumes the risk of his own mistakes and the action of wind and tide and all the forces of nature." And—"The defense, therefore, that the defendants sold the whisky on the high seas where it was lawful to sell it is not available. The defendants being under arrest in the United States, it make no difference that they were outside the jurisdiction when by aiding and abetting they become principals in crime committed in the United States."

Claimant makes some objection to the particular causes of forfeiture alleged in the libel, but I find the exceptions to the second, third, fourth, and fifth causes of forfeiture should be overruled and disallowed; but the exception to the first cause of forfeiture requires further consideration.

[6, 7] The treaty was made to aid in the prevention of the smuggling of intoxicating liquor into the United States, and I do not believe that the mere possession of liquor, at some undescribed place beyond the territorial limits of the United States by a British ship, without any intention to attempt to commit an offense against the laws of the United States, would be sufficient under the treaty to constitute a cause of forfeiture under the laws of the United States, including the treaty; but to possess the liquor within the extended limits with the intent to smuggle it into the United States would seem to constitute an attempt to commit an offense against our laws.

In the first cause of forfeiture as alleged in the libel there are no allegations as to the location of the vessel, nor that the distance from the coast to the schooner can be traversed in one hour by the vessel endeavoring to commit the offense. I therefore hold that the exception to the first cause of forfeiture, solely because of a lack of the necessary allegations as pointed out, is sustained. But as an amendment of this cause of forfeiture, if the district attorney desires to amend, can undoubtedly be made within

a short period of time, I will give the district attorney leave to file an amended libel, with the necessary allegations to bring this cause of forfeiture under the treaty, within 10 days after the granting of the order hereon, if entered on the motion of the district attorney, or within 10 days after service of a copy of the order with notice of entry, if granted on the motion of the attorney for the claimant; and also leave to amend, within the same time, any of the causes of forfeiture, if he intends to show that the liquor was intended to be conveyed to the United States by the motorboat instead of by the Pictonian, or cannot at this time say by which one of the vessels the liquor was intended to be conveyed to the United States, by making allegation as to the ability of each of them to reach the coast within an hour.

Settle order on notice.