## The Baltimore & Ohio Railroad Company, Appellee, v. Denney & Company, Appellant.

### Gen. No. 31,861.

1. CARRIERS—*jurisdiction to determine reasonableness of freight charges.* A court has no authority to pass upon the reasonableness or unreasonableness of freight charges on an interstate shipment, but the question is one for the Interstate Commerce Commission.

2. CARRIERS—*what is not cause for continuance of freight rate case.* A defendant cannot ask that a case be continued till the reasonableness of freight rates sued for can be determined without a showing of any action therefor before the Interstate Commerce Commission or positive assurance of future action.

3. CARRIERS—*showing necessary to sustain icing charge.* A carrier cannot collect a charge for icing freight nearly 23 hours after a diversion order without showing that it was not guilty of negligence in failing to ice sooner.

4. APPEAL AND ERROR—*when judgment entered in Appellate Court.* Proper judgment may be entered in the Appellate Court in case there was no jury and the facts were stipulated.

Appeal by defendant from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed and judgment here. Opinion filed October 10, 1927.

O'CONNELL, McGLINN & O'GALLAGHER, for appellant; THOMAS DONNELLY, of counsel.

H. D. SHEEAN and E. W. LADEMANN, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendant to recover $54 claimed to be due for transportation charges, icing, and other services rendered. There was a trial before the court without a jury and a finding and judgment in plaintiff's favor for $52, and defendant appeals.

Plaintiff set up in its statement of claim that there was a balance due it for freight charges on a shipment of a mixed carload of spinach and parsley, which was transported from Laredo, Texas, to St. Louis, Missouri, and there diverted to Washington, D. C.; that plaintiff had collected from the defendant for its services $372.40, but that the correct amount was $426.40; that the error occurred by reason of the fact that the car was billed as a straight carload of spinach, when in fact the car contained spinach and parsley, and that the charges were higher on the latter than the former. In its statement of claim there was an item of $2.40 for icing the car at St. Louis and a further charge of $2 for what is designated as "car service" at St. Louis, Missouri.

The defendant filed an affidavit of merits in which it set up that it had paid the plaintiff $372.40 as plaintiff alleged; that the correct charge according to the tariffs on file with the Interstate Commerce Commission was $422, but that this charge was unreasonable to the extent of $49.60; that the charge plaintiff made for the two items of $2.40 and $2 above mentioned, was erroneous; that defendant had paid these two items and that they should be refunded. The facts were stipulated and from them it appears that the proper freight charge for transporting the car in question, as shown by the tariffs filed with the Interstate Commerce Commission, was $422, as plaintiff alleged and as defendant admitted.

The defendant contends that the charge for freight was unreasonable and the court should have so found; or, in the event it was held that the court had no such

authority, the cause should have been continued until it could have had the matter heard before the Interstate Commerce Commission. It has been repeatedly held that a court has no authority to determine the reasonableness or unreasonableness of freight charges, but that this is a matter for the Interstate Commerce Commission. *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426; *Mitchell Coal & Coke Co. v. Pennsylvania R. Co.*, 230 U. S. 247. Nor do we think there is any error in the refusal of the court to continue the case so that the defendant might take the matter of the alleged unreasonableness of the rates up with the Interstate Commerce Commission. The record shows that the defendant had filed an "informal complaint with the commission," and that it had there been denied. There was nothing then pending before the Interstate Commerce Commission and there was no positive assurance that any action would be taken. Counsel for the defendant admit they have no case sustaining their contention on this point and no law is called to our attention that requires a continuance in such a situation. We think there was no error in the ruling of the court in refusing to continue the case.

The defendant further contends that the item of $2.40 paid for re-icing the car at St. Louis was an improper charge against it. The provisions of the tariff on file with the Interstate Commerce Commission, pertaining to the point under consideration, are paragraph D of Rule 200 and paragraphs A and D of Rule 225. Paragraph D of Rule 200 provides: "State refrigeration charges shown herein include the services of icing and reicing from point of origin to final destination except as otherwise provided in Rules Nos. 75, 215 and 225." Paragraph A of Rule 225 is headed as follows: "Re-icing at intermediate, stop or hold points at reconsigning points and final destinations." And that paragraph provides: "(A) When cars are stopped or held at any intermediate points between

origin and final destination on orders of or awaiting reconsigning or other instructions from shipper, owner or consignee, carrier will examine bunkers or tanks daily, and when such cars require additional ice they will be re-iced to capacity and when ordered forward from such intermediate point bunkers or tanks will be re-iced to capacity before forwarding.  (See Paragraph 'D.')''  Paragraph D is as follows:  ''(D) When cars are stopped or held at any intermediate point between point of origin and final destination on orders of, or awaiting reconsigning instructions from shipper, owner or consignee, a charge as published in Section No. 4 of this tariff will be made for all ice which may be supplied at such intermediate, stop or reconsigning point and collected in addition to all other charges.''

The facts as stipulated show that the car arrived at St. Louis, Missouri, at 1:55 p. m. on March 14, 1923; that it was reconsigned by the defendant to Washington, D. C. at 2:25 p. m. on March 15, 1923, and that the car was reiced at St. Louis, Missouri, at 1:15 p. m. on March 16, 1923.  The charge made for this icing was $2.40.  The defendant's contention is that under the rules of the tariff, which we have above quoted, the charge of $2.40 could not be properly made against it because the car was not awaiting a reconsigning order when the icing was done, but on the contrary the car was ordered to Washington at 2:25 p. m. on March 15 and the icing was not done until nearly 24 hours thereafter.  We had occasion to consider the identical paragraphs of the tariff in the case of the *Union Pac. R. Co. v. Denney & Co.*, 237 Ill. App. 483, where a similar contention was made, and in passing on it we there said (p. 487): ''It seems obvious that plaintiff could not always be in a position to immediately move the cars forward upon receiving the reconsigning orders.  Some delay must inevitably take place, and in the instant case it being stipulated that

there was no negligence on the part of the plaintiff (the railroad) we think defendant was required to pay for the icing.'' It will be noted that in that case it was stipulated that there was no negligence on the part of the railroad in moving the car forward after it had received the reconsigning order. There is no such stipulation in the case at bar. All that appears is that the car was not re-iced until nearly 23 hours after the reconsigning order was given to the railroad company. Whether there was any negligence in this delay is not disclosed, and since plaintiff is contending that it is entitled to the $2.40, we think it was incumbent upon it to show that it was not guilty of any negligence in failing to ice the car sooner. It had all the facts in its possession. We made a somewhat similar ruling in the case of *Alton v. Mineral Point & Northern Ry. Co.*, 222 Ill. App. 105. From what we have said it follows that the judgment was entered for $2.40 too much, but since there was no jury and the facts are stipulated, we can enter the proper judgment here without remanding.

The judgment of the municipal court of Chicago is reversed and judgment entered in this court in favor of the plaintiff against the defendant for $49.60. The defendant will be required to pay the costs in this court.

*Judgment reversed and judgment here.*

MATCHETT, P. J., and McSURELY, J., concur.