PORT OF BANDON, a municipal corporation, Libelant,

v.

OLIVER J. OLSON & CO., a California corporation, Respondent.

Civ. No. 9896.

United States District Court
D. Oregon.

June 25, 1959.

William F. White, White, Sutherland & White, Portland, Or., for libelant.

Curtis W. Cutsforth, King, Miller, Anderson, Nash & Yerke, Portland, Or., for respondent.

EAST, District Judge.

This admiralty matter came on for trial before this Court upon the following admitted facts and the contentions of libelant and respondent respectively.

### Admitted Facts

(1) That now and at all times herein mentioned, libelant, Port of Bandon, is and was a municipal corporation organized and existing pursuant to ORS 777.-010 of the laws of the State of Oregon, and as such conducts certain affairs maritime at Bandon, Oregon.

(2) That now and at all times mentioned respondent is and was a corporation organized and existing under the laws of the State of California, and as such operates vessels engaged in interstate commerce, which vessels regularly ply the waters of the Pacific Ocean and the waters within the State of Oregon, including the navigable waters of the United States at and near Bandon, Oregon.

(3) That this cause is in personam and is within the admiralty and maritime jurisdiction of the above entitled Court.

(4) That libelant's Commissioners, by resolution of its Board on September 11, 1957, adopted its Port of Bandon Tariff No. 1,[1] and thereafter caused it to be issued and published on September 23, 1957, to become effective on October 28, 1957; copies of said Tariff were de-

---

1. Refer to paragraph IV of the Court's findings of fact.

livered to the United States Maritime Board for filing and received by said Board. That a copy of said Tariff was mailed to respondent and received by it on or about October 25, 1957; that a copy of said Port of Bandon Tariff No. 1 is contained in libelant's pretrial Exhibit 1.

(5) That respondent's vessels called at the Port of Bandon on or about each of the dates set forth in paragraph II of the libel filed herein.

### Contentions of Libelant

(1) That respondent with knowledge of the Tariff and charges contained therein used the Port of Bandon and its facilities and libelant performed or made available to respondent the said services for which said charges were levied; that its Tariff is lawful and that there is now due and owing from respondent to libelant the sum of $24,523.88 for port charges through December 31, 1958, the sum of $——— paid for dockage and the sum of $——— paid for water and electricity, together with interest thereon, all as more particularly set forth in libelant's pretrial Exhibit 2.

(2) Libelant further contends that respondent's contentions numbered 4, 5, 9, and 11, pertaining to reasonableness, classification of vessels, discrimination or computation of charges, are not properly matters to be urged or defenses to be made in this cause and before this Court, but, rather, that the United States Maritime Board has initial, exclusive and primary jurisdiction to determine such matter.

(3) Libelant denies the contentions of respondent. .

### Contentions of Respondent

(1) Respondent denies the contentions of libelant.

(2) The charges contained in libelant's purported "Tariff No. 1" and upon which libelant's alleged claim against respondent herein is based, are for services which are fictitious and which, in fact, have not been rendered.

(3) Said charges are for services which were and are of no value to re-

spondent and which respondent has at no time desired, requested, accepted, or used.

(4) Said charges bear no reasonable relation to, have not been computed on the basis of, and are grossly disproportionate to either the cost or value of the services for which the same purport to be assessed and, as applied to respondent and other carriers similarly situated, are so unreasonably high as to be oppressive and confiscatory.

(5) The method of computing the amounts of such charges as set forth in said purported Tariff is based upon an arbitrary classification of vessels having no reasonable relation to the cost or value of the services purported to be performed therefor.

(6) Said charges, although purportedly assessed in consideration for the performance of designated services, were conceived, established and are now sought to be enforced by libelant solely as a means of raising revenue, and the enforcement thereof would operate to impose a charge for the privilege of entering, trading in or lying in the navigable waters of the United States constituting the port or harbor adjacent to the City of Bandon, Oregon.

(7) By reason of the foregoing, said charges, and the ordinance or other act of libelant establishing or seeking to enforce the same, are illegal, unconstitutional and void as purporting to impose a duty on tonnage, contrary to and in violation of Article I, Section 10, Clause 3, of the United States Constitution.

(8) Said charges, although purportedly assessed in consideration for the performance of designated services, were conceived, established and are now sought to be enforced by libelant solely as a means of raising revenue, and the enforcement thereof would operate to obstruct, impede and interfere with the free flow of commerce and unduly burden the same, by reason whereof said charges, and any ordinance or other act of libelant establishing or seeking to enforce the same, are illegal, unconstitutional and void as contrary to and in

violation of Article I, Section 8, Clause 3, of the United States Constitution.

(9) The method of computing the amounts of said charges as set forth in said purported Tariff is based upon an arbitrary classification of vessels having no reasonable relation to the objects or purposes for which said charges purport to be assessed, or to the cost or value of the services purported to be performed therefor, with the result that said charges unfairly discriminate against respondent and its vessels, as compared with others occupying the same relation to said services and benefits claimed by libelant to be received in consideration for said charges.

(10) By reason of the foregoing, and the operation of said charges, if enforced, to take from respondent its private property for a public use without fair or just compensation, said charges, and the ordinance or other act of libelant establishing or seeking to enforce the same, are illegal, unconstitutional and void as depriving respondent of its property without due process of law, contrary to and in violation of the United States Constitution, Amendment Fourteen, Section 1.

(11) The method of computing the amounts of said charges as set forth in said purported Tariff is based upon an arbitrary classification of vessels having no reasonable relation to the objects or purposes for which said charges purport to be assessed, or to the cost or value of the services purported to be performed therefor, with the result that said charges unfairly discriminate against respondent and its vessels, as compared with others occupying the same relation to said services and benefits claimed by libelant to be received in consideration for said charges.

(12) By reason of the foregoing, and the operation of said charges, if enforced, to deny to respondent the equal protection of the laws, said charges, and the ordinance or other act of libelant establishing or seeking to enforce the same, are illegal, unconstitutional and void as contrary to and in violation of the United States Constitution, Amendment Fourteen, Section 1.

(13) The establishing and enforcement of the charges contained in libelant's purported "Tariff No. 1" and upon which libelant's alleged claim against respondent herein is based are in excess of the powers granted libelant by the statutes of the State of Oregon and, therefore, such charges are illegal, void, and of no force and effect.

(14) The matter of the reasonableness, propriety and validity of the charges asserted by libelant against respondent herein, and particularly libelant's so-called "Port Charges," is not within the jurisdiction of the United States Maritime Board and may properly be determined by this Court in this cause.

(15) In the event the Court determines that any of respondent's contentions herein raise matters concerning which the United States Maritime Board has initial, exclusive jurisdiction, then this cause should be stayed for the purpose of allowing such matters to be presented to the United States Maritime Board for decision.

The Court has recited the pretrial order contentions of the respective parties in full so that the reader may have a complete picture of the issues placed before the Court in this matter.

### Findings of Fact

This Court finds from the evidence adduced that:

#### I.

Libelant owns and operates a dock in a proprietary capacity at the Bandon harbor, for the use of which libelant makes certain specified charges. Libelant has also for some years owned and operated a tugboat, the Port of Bandon, whose services have been made available, at designated rates, to vessels and others desiring the same.

#### II.

For an extended period prior to June, 1957, respondent had utilized libelant's said tug to assist respondent's vessels to enter and leave the Bandon harbor. The use of said tug was pursuant to re-

spondent's request therefor, and libelant was paid for the use of its tug in accordance with its designated rates. During said period respondent's vessels called at the Port of Bandon on an average of about four or five times a month and paid libelant, for the use of libelant's tug on each such call, the specified charge of $500. Respondent thus was paying libelant for the use of libelant's tug during said period approximately $2,000 to $2,500 a month.

### III.

Commencing on or about June, 1957, respondent determined that its business would best be served by making other arrangements for tug services and, accordingly, discontinued using the services of libelant's tug in connection with its operations.

### IV.

Said Tariff, in addition to setting forth libelant's rates for wharfage (charge assessed cargo for the use of libelant's dock), towage (charge for the use of libelant's tug), water and electricity, contains at Item 70 thereof a statement of a purported "Port Charge" as follows:

"(a) Port Charge Defined

"The port charge is the charge assessed against the vessels, their owners, agents or operators which use the Port of Bandon harbor for performing the following services on behalf of the vessel:

"1. Policing and supervision of harbor and enforcement of harbor regulations.

"2. Furnishing fire fighting equipment and emergency towing equipment.

"3. Furnishing and maintaining aids to navigation and other safety facilities and services.

"4. Arranging moorages for vessels.

"5. Furnishing bar reports, soundings, weather reports and sea conditions.

"(b) Port Charge Rates Will Be As Follows:

Lumber and Logs—25 cents per MFBM

Sand and Gravel—5 cents per yard

Freight, N.O.S.—25 cents per ton of 2,000 lbs."

It is the validity of this "Port Charge" which is here in dispute.

### V.

From the testimony of libelant's Commissioners and tug captain and the logbook of libelant's tug, the "performance" of the "services" which provide the purported basis for libelant's Port Charge is seen to be limited to the following:

(a) Policing and supervision of harbor and enforcement of harbor regulations.

The tug Port of Bandon has removed trash from Bandon Harbor on some 13 occasions since 1952. Libelant has never promulgated any harbor regulations.

(b) Furnishing fire fighting equipment and emergency towing equipment.

The fire fighting equipment consists of a pump, two hoses and some fire extinguishers on the tug. This equipment has not been used since 1936.

The emergency towing equipment is equipment on the tug. Emergency towing has been provided for disabled fishing boats, and charges for such assistance have been made to those assisted.

(c) Furnishing and maintaining aids to navigation and other safety facilities and services.

The only "aids to navigation" consist of five floodlights on the jetty, for which the United States furnishes the electricity.

Safety facilities appear to be nonexistent, except for the carrying on the tug of life rings and "stuff like that."

(d) Arranging moorages for vessels.

It is not shown that respondent's vessels have ever had the benefit of such service (as distinguished from the use of libelant's dock, for which an express charge has been made and paid by respondent).

(e) Furnishing bar reports, soundings, weather reports and sea conditions.

When requested, the tug captain reports when the bar is passable—information obtainable by observation—also, when requested, the tug takes soundings prior to towing a vessel in or out the channel. As the channel bottom at Bandon shifts constantly, this information is usable only at the time given and can inure to the benefit of only the particular vessel requesting the same.

### VI.

During the entire period for which libelant's charge is here asserted, libelant's tug left its berth but a scattered few times. On none of these occasions was the tug engaged in any services for respondent. During said period, the tug crew has been engaged in building a small boat harbor.

### VII.

During said period respondent has not requested libelant to perform any of said "services."

### VIII.

Respondent is the only ocean carrier which calls at Bandon regularly and, except for a few isolated instances, is the only carrier which has served Bandon harbor during the period in question.

### IX.

Subsequent to the issuance and promulgation of said Tariff, respondent's vessels have continued to enter the Bandon harbor for the purpose of taking on lumber cargo for ocean carriage in interstate commerce. During said period respondent has taken on its vessels approximately 100,000,000 board feet of lumber from Bandon. Respondent's vessels use libelant's dock approximately half the time; on other occasions they load at a private dock.

### X.

As has been admitted with commendable candor by libelant's commissioners, its Port Charges were conceived, designed and promulgated with but one aim in mind—to enable libelant to obtain the $25,000 to $30,000 a year income it needs to maintain its tug and three-man crew without going onto the tax rolls.

As to the constitutionality of Item 70 as it appears to have applied to respondent during the times involved, this Court has grave doubts; however, for the reasons hereinafter stated, the constitutionality of the question raised is reserved. Likewise, any question as to whether or not the adoption and attempted enforcement of Item 70 is in excess of the powers granted libelant by the statutes of the State of Oregon is also reserved.

### Conclusions of Law

■ This Court firmly concludes that the United States Maritime Board has initial and primary jurisdiction to determine the "lawfulness and reasonableness of the practices" under Item 70 so far as the same applies to shipping engaged in interstate commerce. Title 46 U.S.C.A. § 801;[2] § 815;[3] and § 816;[4] Contract Rates—Port of Redwood City, 2 U.S.M.C. 727; and California v. United

---

2. "The term 'other person subject to this chapter' means any person not included in the term 'common carrier by water,' carrying on the business of forwarding or furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water.

"The term 'person' includes corporations * * * existing under or authorized by the laws of the United States, or any State, Territory, District, or possession thereof, or of any foreign country." [See paragraph (1) of Admitted Facts.]

3. "It shall be unlawful for * * * or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly—

"First. To * * * subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

4. "* * * and every other person subject to this chapter shall establish, observe, and enforce just and reasonable regulations and practices relating to or connected with the receiving, handling, storing, or delivering of property. * * *"

States, 320 U.S. 577, 64 S.Ct. 352, 88 L. Ed. 322.

■ Also, this Court firmly concludes that the respondent is not precluded from seeking the United States Maritime Board's administrative determination or order by reason of its failure to seek upon its own petition such a determination prior to action against it. It is not the establishment, publication or filing of an unlawful or unreasonable tariff that gives grounds for affirmative relief; on the contrary, it is the attempted enforcement of such unlawful or unreasonable tariff that gives grounds or dignity to seeking affirmative relief.

■ Further, this Court concludes that these proceedings should be stayed in their present posture, and the respondent should be allowed a reasonable length of time and opportunity to apply for and obtain from the United States Maritime Board its determination or ruling as to

the "lawfulness and reasonableness" of the provisions and practices under Item 70 so far as the same apply to shipping engaged in interstate commerce, and particularly to the libelant under the facts as said Board shall find. Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 1912, 230 U.S. 247, 33 S.Ct. 916, 924, 57 L.Ed. 1472;[5] General American Tank Car Corp. v. El Dorado Terminal Co., 1939, 308 U.S. 422, 60 S.Ct. 325, 331, 84 L.Ed. 361;[6] Thompson v. Texas Mexican Ry. Co., 1945, 328 U.S. 134, at page 147, 66 S.Ct. 937, 945, 90 L.Ed. 1132;[7] United States v. Western Pacific R. Co., 1956, 352 U.S. 59, 77 S.Ct. 161, 165, 1 L.Ed.2d 126.[8]

There may develop, subsequent to the determination or order of the United States Maritime Board in this matter, if adverse to the respondent, the question as to whether further proceedings of the cause herein should be controlled by the

5. The Supreme Court stayed dismissal to allow plaintiff a reasonable time to apply to the commission for a ruling on the reasonableness of the rebate:

"But, owing to the peculiar facts of this case, the unsettled state of the law at the time the suit was begun, and the failure of the defendant to make the jurisdictional point in limine, so that the plaintiff could then have presented its claim to the Commission and obtained an order as to the reasonableness of the practice or allowance,—direction is given that the dismissal be stayed so as to give the plaintiff a reasonable opportunity within which to apply to the Commission for a ruling as to the reasonableness of the practice and the allowance involved; and, if in favor of the plaintiff, with the right to proceed with the trial of the cause in the district court, in which the defendant shall have the right to be heard on its plea of the statute of limitations as of the time the suit was filed, and any other defense which it may have."

6. "When it appeared in the course of the litigation that an administrative problem, committed to the Commission, was involved, the court should have stayed its hand pending the Commission's determination of the lawfulness and reasonableness of the practices under the terms of the Act. There should not be a dismissal, but, as in Mitchell

Coal & Coke Co. v. Pennsylvania R. Co., supra, the cause should be held pending the conclusion of an appropriate administrative proceeding. Thus any defenses the petitioner may have will be saved to it."

7. "But in a long line of cases beginning with Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, it has been held that where the reasonableness or legality of the practices of the parties was subject to the administrative authority of the Interstate Commerce Commission, *the court should stay its hand* until the Commission had passed on the matter. See General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, and cases cited." [Emphasis added.]

8. " 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case *the judicial process is suspended* pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361." [Emphasis added.]

provisions of the Administrative Procedure Act, Title 5 U.S.C.A. §§ 1001–1011, inclusive. In any event, any such question is now reserved.

The conclusions of the Court above are adopted as the Court's order herein, and

It is so ordered.