FEDERAL MARITIME COMMISSION,
Petitioner,

v.

MAERSK LINE, Respondent.

Misc. No. 18–304.

United States District Court
S. D. New York.

July 28, 1965.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, Louis E. Greco, Gilbert W. Fleisher, Attys., Dept. of Justice, M. C. Miskovsky, H. B. Mutter, Attys., F. M. C., for petitioner.

Haight, Gardner, Poor & Havens, New York City, Wharton Poor, R. Glenn Bauer, New York City, of counsel, for respondent.

BONSAL, District Judge.

By way of Order to Show Cause, the Federal Maritime Commission (Commission) seeks an injunction against Maersk Line (Maersk) pursuant to Section 29 of the Shipping Act, 1916 (46 U.S.C. § 828) for the purpose of enforcing its order dated February 3, 1965 issued in a proceeding entitled "Imposition of Surcharge on Cargo to Manila, Republic of the Philippines."

The order of February 3, 1965 sought to be enforced provides:

"IT IS ORDERED, That respondents Maersk Line and Pacific Star Line cease and desist from assessing on newsprint moving from Searsport, Maine, to Manila, Republic of the Philippines, a surcharge which is prejudicial and discriminatory to exporters of newsprint from the United States and to the Port of Searsport, Maine;"

Maersk Line is the trade name used by two Danish corporations in operating cargo vessels. Jurisdiction over Maersk was obtained by service upon Moller Steamship Co., Inc., general agent for Maersk in the United States, with offices in New York. Maersk operates a cargo service between ports in the United States and Canada, and ports in the Far East. In the trade between Eastern United States ports and Manila, Philip-

pine Islands, Maersk is a member of the Far East Conference, which is an association of some 15 steamship lines which jointly fix freight rates for the transportation of commodities on the vessels of its member lines pursuant to an agreement filed and approved under Section 15 of the Shipping Act, 1916 (46 U.S.C. § 814). The Conference files a tariff of its rates with the Commission pursuant to Section 18 of the Shipping Act, 1916 (46 U.S.C. § 817).

Maersk's membership in the Far East Conference requires it to observe conference rates with respect to trade between east coast ports of the United States and Manila, but not with respect to trade between Canadian ports and Manila.

The proceeding before the Commission arose by reason of labor difficulties in the port of Manila, culminating in a strike which began in 1963. The proceeding (Docket No. 1155) included the Far East Conference, the Pacific Westbound Conference and their members, and various other steamship lines, and its purpose was to consider surcharges on cargo rates which had been imposed by reason of the delays in Manila caused by the labor troubles.

Following hearings before an Examiner, the Commission found the surcharges to be reasonable. The Examiner also found that Maersk, as a member of the Far East Conference, was required to apply the Conference surcharge as to shipments from eastern United States ports and that the Commission was without jurisdiction to require Maersk to apply a similar surcharge on shipments from east Canadian ports to Manila. The Commission disagreed with the Examiner, finding in effect that by applying the Conference surcharge on shipments between eastern United States ports and Manila, and by not charging the same surcharge on shipments from east Canadian ports to Manila, Maersk was discriminating against American shippers and against the port of Searsport, Maine. There was evidence that Great Northern Paper Co. had traditionally exported newsprint through Searsport, Maine, and

that, in order to avoid the surcharge, it began shipping through St. John, New Brunswick, and that by reason of the competition from Canadian paper mills, it had lost sales totalling some 1400 tons of newsprint over a period of two months to the Canadian mills. The Commission concluded, on these facts, that the Great Northern Paper Co. and the port of Searsport had been discriminated against by reason of the Conference surcharge.

In contesting the injunction, Maersk alleges that since the date of the order, February 3, 1965, its vessels have not called at Searsport. Moreover, Maersk alleges that the surcharge is imposed in the tariff of the Far East Conference, of which it is a member. Evidence has been offered that at three Conference meetings held since the issuance of the Commission's order, Maersk has moved for the elimination of the Conference surcharge, and that the motions have been lost.

■ While several grounds have been asserted by Maersk in opposition to this motion for an injunction, the only one that needs consideration is whether Maersk has violated the Commission's order so as to confer jurisdiction upon the court pursuant to 46 U.S.C. § 828.

§ 828 provides:

"In case of violation of any order of the Federal Maritime Board, other than an order for the payment of money, the Board, or any party injured by such violation, or the Attorney General, may apply to a district court having jurisdiction of the parties; and if, after hearing, the court determines that the order was regularly made and duly issued, it shall enforce obedience thereto by a writ of injunction or other proper process, mandatory or otherwise."

From the papers before the Court, it appears that the surcharge is contained in the Far East Conference's tariff filed with the Commission and not in a tariff filed by Maersk; that since the date of the order, Maersk has not assessed or sought to assess the surcharge contained

in the Conference's tariff; and that Maersk has unsuccessfully sought to have the surcharge removed from the Conference tariff. On this record the Court finds no violation of the Commission's order, which is necessary to a proceeding for its enforcement under 46 U.S.C. § 828.

■ If the Commission believes that the Conference surcharge approved in the proceeding above mentioned is now unreasonable, it is free to reopen the proceeding and, if it so finds, to direct the Conference to remove the surcharge. Indeed, if the Commission believes that the difference in rate between Searsport, Maine and east Canadian ports caused by the surcharge results in discrimination to United States shippers and to the port of Searsport, this would appear to be an appropriate procedure to follow. Until such proceeding is had and an order entered, it would appear that Section 18(b) (3) of the Shipping Act, as amended (46 U.S.C. § 817(b) (3)) requires Maersk to abide by the Conference tariff, including the surcharge. If Maersk took on newsprint in Searsport, destined for Manila, without assessing the Conference surcharge, it would violate Section 18(b) (3). (Violation of this section can result in a penalty of $1,000 for each day such violation continues. Section 18(b) (6) of the Shipping Act, as amended (46 U.S.C. § 817(b) (6)).) It would hardly seem equitable to enter an injunction requiring Maersk to obey the order of the Commission where by doing so it would be violating another section of the same statute. (See West India Fruit & Steamship Co. v. Seatrain Lines, Inc., 170 F.2d 775 (2d Cir. 1948)). Moreover, Maersk cannot be charged with a violation unless and until it assesses the surcharge on shipments of newsprint from Searsport, Maine to Manila. As was stated in Port of Bandon v. Oliver J. Olson & Co., 175 F.Supp. 736 (D.Or.1959):

> "It is not the establishment, publication or filing of an unlawful or unreasonable tariff that gives grounds for affirmative relief; on the contrary, it is the attempted enforcement of such unlawful or unreasonable tariff that gives grounds or dignity to seeking affirmative relief."

Since no violation of the Commission's order of February 3, 1965 is found, the application of the Commission for an injunction pursuant to Section 29 of the Shipping Act, 1916 (46 U.S.C. § 828) is denied.

It is so ordered.